IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAMLYN HUNT, J.D., | CASE NO. 1:25-cv-00191-JAO-KJM |
| Plaintiff, Pro Se, | **MEMORANDUM IN SUPPORT OF MOTION** |
| v. | |
| OPENAI, INC., a Delaware Corporation, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION**

# TABLE OF CONTENTS

Page

I.       INTRODUCTION ................................................................. 1
II.      BACKGROUND ................................................................. 2
III.     LEGAL STANDARD ........................................................ 4
     A.   Subject Matter Jurisdiction ................................................ 4
     B.   Failure to State a Claim. .................................................... 5
IV.      ARGUMENT .................................................................... 5
     A.   Plaintiff Lacks Standing to Pursue His Claims. ................................. 5
     B.   Plaintiff's FAC Presents a Non-Justiciable Political Question. .......... 15
     C.   Plaintiff Fails to State a Public Nuisance Claim. ............................. 20
     D.   Plaintiff Fails to State a Public Trust Claim. .................................. 23
     E.   Plaintiff Fails to State a Claim for Design Defect Product
          Liability, Failure to Warn Product Liability, and Negligent
          Design. ........................................................................ 24
     F.   The Complaint Should Be Dismissed With Prejudice ....................... 27
V.       CONCLUSION ................................................................. 27

## Table of Authorities

**Cases**                                                                    **Page(s)**

*Abdulaziz v. Twitter, Inc.*,
  2024 WL 4688893 (9th Cir. Nov. 6, 2024) ...................................................... 13

*Akee v. Dow Chem. Co.*,
  272 F. Supp. 2d 1112 (D. Haw. 2003) ............................................................ 24

*Aktepe v. USA*,
  105 F.3d 1400 (11th Cir. 1997) ................................................................. 17, 18

*Arc of Iowa v. Reynolds*,
  94 F.4th 707 (8th Cir. 2024) ........................................................................... 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 5

*Baker v. Carr*,
  369 U.S. 186 (1962) ...................................................................................... 16

*Baker v. Castle & Cooke Homes Hawaii, Inc.*,
  2012 WL 1454967 (D. Haw. Apr. 25, 2012) .................................................. 26

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ................................................................. 8, 9, 11

*Brady Campaign to Prevent Gun Violence v. Ashcroft*,
  339 F.Supp.2d 68 (D.D.C. 2004) .............................................................. 14-15

*Brady Campaign to Prevent Gun Violence v. Brownback*,
  110 F.Supp.3d 1086–94 (D. Kan. 2015) ......................................................... 9

*Bridge Aina Le'a, LLC v. State of Hawaii Land Use Comm'n*,
  125 F.Supp.3d 1051 (D. Haw. 2015) ............................................................... 5

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
  273 F.3d 536 (3d Cir. 2001) ......................................................................... 21

*Cahen v. Toyota Motor Corp.*,
   717 F. App'x 720 (9th Cir. 2017) ............................................................. 8, 11

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .............................................................................. 6, 7, 10

*Corrie v. Caterpillar, Inc.*,
  503 F.3d 974–84 (9th Cir. 2007) ........................................................ 19

*Cousart v. OpenAI LP*
  2024 WL 3282522 (N.D. Cal. May 24, 2024) ................................. 20

*Detroit Bd. of Educ. v. Celotex Corp.*,
  196 Mich.App. 694 (1992) ............................................................... 22

*El-Shifa Pharm. Indus. Co. v. United States*,
  607 F.3d 836 (D.C. Cir. 2010) ........................................................ 17

*Fairview Twp. v. E.P.A.*,
  773 F.2d 517 (3d Cir. 1985) ............................................................. 12

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ......................................................................... 12

*Helfand v. Gerson*,
  105 F.3d 530 (9th Cir. 1997) ...................................................... 22-23

*Herrington v. Johnson & Johnson Cos.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................... 9-10

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*,
  528 U.S. 167 (2000) ........................................................................... 6

*Japan Whaling Ass'n v. Am. Cetacean Soc.*,
  478 U.S. 221 (1986) ..................................................................... 5, 15

*Juliana v. United States*,
  947 F.3d 1159 (9th Cir. 2020) ......................................................... 17

*Lance v. Coffman*,
  549 U.S. 437 (2007) .................................................................... 12, 13

*Lau v. Allied Wholesale, Inc.*,
  82 Hawaiʻi 428 (1996) ..................................................................... 24

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Cir. 2021) ......................................................... 26

*Littleton v. State*,
  66 Haw. 55 (1982) ........................................................................... 20

*Locricchio v. Trump,*
  2021 WL 1893551 (D. Haw. May 11, 2021) ................................................. 4, 27

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................... *passim*

*Maly v. Pritzker,*
  2024 WL 4347110 (N.D. Ill. Sept. 30, 2024) ........................................... 12-13

*Marchante v. Sony Corp. of Am., Inc.,*
  801 F.Supp.2d 1013 (S.D. Cal. 2011) ................................................... 27

*Maya v. Centex Corp.,*
  658 F.3d 1060 (9th Cir. 2011) ............................................................. 4

*Molokai Veterans Caring For Veterans v. Cnty. of Maui,*
  2011 WL 1637330 (D. Haw. Apr. 28, 2011) ................................................ 26

*Perry v. Newsom,*
  18 F.4th 622 (9th Cir. 2021) ............................................................. 13

*Republican Nat'l Comm. v. Francisco Aguilar,*
  2024 WL 4529358 (D. Nev. Oct. 18, 2024) ................................................ 9, 12

*Rhode Island Ass'n of Coastal Taxpayers v. Neronha,*
  2023 WL 6121974 (D.R.I. Sept. 19, 2023) ................................................. 15

*Ruiz v. Gap, Inc.,*
  380 Fed.Appx. 689 (9th Cir. 2010) .................................................... 25

*Sierra Club v. Morton,*
  405 U.S. 727 (1972) ...................................................................... 12

*Simon v. E. Kentucky Welfare Rts. Org.,*
  426 U.S. 26 (1976) ....................................................................... 14

*Skaff v. Meridien N. Am. Beverly Hills, LLC,*
  506 F.3d 832 (9th Cir. 2007) ............................................................. 4

*State ex rel. Hunter v. Johnson & Johnson,*
  499 P.3d 719 (Ok. 2021) ................................................................ 22

*In re Soc. Media Adolescent Addiction/Pers. Injury Products Liab. Litig.*,
754 F.Supp.3d 946 (N.D. Cal. 2024) ............................................... 26

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ...................................................................... 6

*State v. Lead Indus., Ass'n, Inc.*,
951 A.2d 428 (R.I. 2008) .............................................................. 22

*Stewart v. Budget Rent-A-Car Corp.*,
52 Haw. 71 (1970) ........................................................................ 24

*Tabieros v. Clark Equip. Co.*,
85 Hawai`i 336 (1997) .................................................................. 25

*Takhar v. Kessler*,
76 F.3d 995 (9th Cir. 1996) ........................................................... 4

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ...................................................................... 6

*United Transp. Union v. ICC*,
891 F.2d 908 (D.C. Cir. 1989) ................................................ 10-11

*In re Waiola O Molokai, Inc.*,
103 Hawai`i 401 (2004) ........................................................ 23, 24

*Warth v. Seldin*,
422 U.S. 490 (1975) ..................................................................... 11

*Williams v. Board of Regents of Univ. Sys. of Ga.*,
477 F.3d 1282 (11th Cir. 2007) ...................................................... 9

*Yoshimoto v. Alaska Airlines, Inc.*,
2024 WL 4535037 (D. Haw. Oct. 21, 2024) .................................... 13

## Statutes

15 U.S.C. §§ 9401-9462 ........................................................ 18

15 U.S.C. § 9451 ................................................................... 18

15 U.S.C. § 9461 ................................................................... 18

## Rules

Federal Rule of Civil Procedure Rule 12(b)(1)  ....................................................... 4

Federal Rule of Civil Procedure Rule 12(b)(6)  ....................................................... 5

## Other

58 Am.Jur.2d *Nuisances* § 1 (1971) .............................................................. 20, 21

84 Fed. Reg. 3967 (Feb. 14, 2019)  ................................................................. 18, 19

85 Fed. Reg. 78939 (Dec. 3, 2020) ...................................................................... 19

Art. XI, § 1 Haw. Constitution ............................................................................. 23

## I.   <u>INTRODUCTION</u>

The First Amended Complaint alleges that "many industry leaders" have "compared AI's impact to humanity's most transformative discoveries," Dkt. 10 (**"FAC"**) ¶23, and made such statements as "AI is one of the most profound things we're working on as humanity." *Id.* ¶24. The FAC recognizes that "OpenAI's services are used by residents, businesses, and government entities throughout Hawaii." *Id.* ¶15.  Indeed, OpenAI is an AI research and deployment company that offers its most popular artificial intelligence ("**AI**") service, ChatGPT, at no cost.[1] Nonetheless, the FAC seeks an injunction barring OpenAI from making its products and services, including ChatGPT, available for use in Hawaii. The FAC seeks such relief based on speculation about potential harms that allegedly could result from artificial general intelligence ("**AGI**") without "adequate safety measures." *See* FAC ¶51.

The FAC should be dismissed for multiple, independent reasons. First, Plaintiff lacks standing to bring his claims because he has not suffered any injury-in-fact that is redressable by this Court. Rather, the FAC is based on speculative potential for future harm if the technology "goes wrong" due to lack of adequate "safety measures." FAC ¶¶14, 27.

---

[1] ChatGPT is available at https://chatgpt.com.

Second, Plaintiff's purported grievances are policy issues that the Court cannot resolve without subjectively balancing competing society-wide policy interests. Accordingly, the FAC is nonjusticiable under the political question doctrine.

Third, Plaintiff fails to state a claim upon which relief can be granted. The claim for public nuisance (Count I) fails because public nuisance claims do not apply to potential harm that may result from the use of a lawful product. The public trust doctrine claim (Count II) fails because such a claim may only be asserted against state government entities. The claims for defective design product liability (Count III), failure to warn product liability (Count IV), and negligent design (Count V) fail because Plaintiff has not alleged that he has suffered an injury, a necessary element for each of those claims.

The FAC should be dismissed with prejudice because the defects are not curable. *See Locricchio v. Trump*, 2021 WL 1893551, at *3 (D. Haw. May 11, 2021).

## II.    <u>BACKGROUND</u>

Plaintiff does not allege that he faces any particular risk of harm from OpenAI or AGI. *See generally* FAC. Rather, the FAC alleges there are unique risks to "Hawaii's economic, cultural, and social welfare" from AGI "if this technology goes wrong." *See id*. ¶¶27, 51. Such alleged potential harms include job displacement, misappropriation of Hawaiian culture, disruptions to Hawaii's energy,

communications, transportation, and water systems, and exacerbation of existing inequalities. *See id*. ¶¶52-66. The FAC also includes hyperbolic rhetoric such as comments about the need to mitigate "the risk of extinction from AI" and "AI will probably most likely lead to the end of the world." *Id*. ¶¶26, 32.

The FAC discusses alleged federal efforts to regulate AI safety, including an October 2023 Executive Order on AI, Congressional hearings and proposed bills to address AI safety, and an international agreement on AI safety signed by the United States. *Id*. ¶¶69, 71-72. Plaintiff asserts "[f]ederal regulatory efforts have collapsed under the current administration, which explicitly revoked previous AI safeguards in favor of 'minimal regulation,'" and "international governance frameworks have disintegrated." *Id*. ¶5.

Plaintiff alleges that "[o]ver the past two years, Plaintiff has worked to advance AI safety legislation in Hawaii, collaborating with Senators [] to draft legislation creating an Office of AI Safety in Hawaii[.]" FAC ¶12. He alleges that "[d]espite these efforts, the bill failed to gain sufficient traction for passage in 2023 and wasn't even sponsored in 2024." *Id*. ¶78. He alleges, "[g]iven the inadequacy" of regulatory efforts, "judicial intervention has become necessary." *Id*. ¶7.

Plaintiff alleges claims for public nuisance, violation of the public trust, design defect product liability, failure to warn product liability, and negligent design. Plaintiff seeks an injunction prohibiting Open AI from making its products and

services available within Hawaii until "OpenAI can demonstrate implementation of comprehensive safety measures," which include "[r]eestablishment of the Superalignment Initiative," implementation of a safety framework outlined in the publication "Planning for AGI and Beyond," governance reforms, democratic process protections, and development of specific protocols to protect Hawaii's cultural and natural resources. *See* FAC at Prayer for Relief.

### III.  LEGAL STANDARD

#### A.    Subject Matter Jurisdiction.

Under Federal Rule of Civil Procedure ("**FRCP**") 12(b)(1), dismissal is appropriate when the court lacks jurisdiction.

Pursuant to Article III of the United States Constitution, a plaintiff must establish standing to pursue the plaintiff's claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  A plaintiff has the burden of establishing the elements required for standing. *Takhar v. Kessler,* 76 F.3d 995, 1000 (9th Cir. 1996).  A plaintiff cannot rely on "bare legal conclusion[s] to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants actions caused his injury." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

The political question doctrine precludes judicial review of "those controversies which revolve around policy choices and value determinations

4

constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.,* 478 U.S. 221, 230 (1986).

### B.    Failure to State a Claim.

Under FRCP Rule 12(b)(6), dismissal is proper where there is either "(1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory." *Bridge Aina Leʻa, LLC v. State of Hawaii Land Use Comm'n,* 125 F.Supp.3d 1051, 1059 (D. Haw. 2015), *aff'd sub nom.* 950 F.3d 610 (9th Cir. 2020).

To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). (citation omitted).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient.  *Id.* (citation omitted).  The Court must accept as true all factual allegations in the complaint. Id. Legal conclusions, however, are not entitled to an assumption of truth and must be supported by factual allegations for the complaint to survive a motion to dismiss.  *Id.*

## IV.    ARGUMENT

### A.    Plaintiff Lacks Standing to Pursue His Claims.

To establish Article III standing, Plaintiff must show that: (1) he has suffered injury in fact that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) the injury is "fairly traceable to the challenged

action of [Defendants];" and (3) it is likely, "as opposed to merely speculative," that the injury "will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.,* 528 U.S. 167, 180-81 (2000). "Requiring a plaintiff to demonstrate a concrete and particularized injury caused by the defendant and redressable by the court ensures that federal courts decide only 'the rights of individuals,' and that federal courts exercise 'their proper function in a limited and separated government.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citations omitted). Plaintiff has not and cannot establish these elements.

      1.    <u>Plaintiff has not established an injury in fact.</u>

For the first element, the injury must be "concrete and particularized" and "'actual or imminent, not 'conjectural' or 'hypothetical.''" *Lujan*, 504 U.S. at 560-61. Plaintiff fails to establish such injury for two independent reasons. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-340 (2016) (particularization and concreteness are "independent requirement[s]" that must both be met). First, his alleged injuries are too speculative to establish an "imminent" injury that is not "conjectural" or "hypothetical." Second, Plaintiff alleges a generalized grievance that is undifferentiated and common to members of the public.

The U.S. Supreme Court has "repeatedly reiterated that 'threatened injury must be ***certainly impending***' ... and that '[a]llegations of ***possible*** future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (bold

6

emphases added). A threatened injury must "proceed with a ***high degree of immediacy***, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 564 n.2 (emphasis added). Thus, allegations of a future harm at some indefinite time cannot be an "actual or imminent injury." *Id.*

Rather than allege a "certainly impending" injury, Plaintiff's complaint is based on speculative future risks of injuries at some indefinite time. *See, e.g.*, FAC ¶79 ("Industry experts … have accelerated ***their timeline predictions*** for artificial general intelligence (AGI) from 'sometime this century' to as early as 2028, or possibly even this year.") (emphasis added). Plaintiff relies on comments regarding policy grievances about the development of AGI and potential risks ***"if this technology goes wrong."*** FAC ¶27 (emphasis added); *see id.* ¶51 ("The development of AGI without adequate safety measures poses unique risks.") (emphasis added). For example, Plaintiff alleges the following speculative and abstract risks:

- Hawaii **faces disruption** from AI systems, "including white-collar job displacement across key sectors of Hawaii's economy." *Id.* ¶52 (emphasis added).

- Hawaii's cultural heritage **faces "threat**s from advanced AI systems, including **the risks** that AI systems … **may** misappropriate and misrepresent Hawaiian cultural knowledge, practices, and language." *Id.* ¶57.

- "Hawaii's critical infrastructure **faces** unique vulnerabilities due to geographic isolation that makes Hawaii's energy, communications, transportation, and water systems particularly vulnerable to disruptions that **could be** caused by increasing capable AI systems operating without appropriate safety measures." *Id.* ¶61 (emphases added).

- "Hawaii's strategic military importance introduces additional security **considerations** regarding AI systems that **might** impact defense-related infrastructure." *Id.* ¶64 (emphases added).

- "Hawaii **faces risk** to its democratic processes from AI systems capable of manipulating public discourse and voter information without adequate safeguards." *Id.* ¶67 (emphasis added).

- "AI systems have the **potential to exacerbate** existing inequalities in access to education, healthcare, and economic opportunities, which are already subjects of concern in Hawaii's diverse population." *Id.* ¶68 (emphasis added).

The Ninth Circuit has routinely held that standing does not exist when, as here, the risk of future harm is speculative. For example, in *Cahen v. Toyota Motor Corp.,* the plaintiffs argued hacking was an "imminent eventuality" because defendants manufactured their cars with technology susceptible to hacking. 717 F. App'x 720, 723 (9th Cir. 2017). The Ninth Circuit held the plaintiffs had not satisfied the concrete and particularized injury requirement because the plaintiffs had not alleged they had been hacked or any hacking had actually occurred outside of controlled environments. *Id.*

In *Birdsong v. Apple, Inc.*, the plaintiffs alleged Apple iPods were defective because users faced "an unreasonable risk of noise-induced hearing loss." 590 F.3d 955, 961 (9th Cir. 2009). The Ninth Circuit held the plaintiffs' allegations did not

8

establish an "actual or imminent" injury because they "rest[ed] on a ***hypothetical risk*** of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner." *Id.* (emphasis added).

Other courts similarly reject standing where the plaintiff alleges a speculative risk of future harm. *See Arc of Iowa v. Reynolds*, 94 F.4th 707, 711 (8th Cir. 2024) ("[T]he general risks associated with COVID-19, even though COVID-19 remains an ever-present concern in society, are not enough to show 'imminent and substantial' harm for standing[.]"); *Williams v. Board of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1302 (11th Cir. 2007) (plaintiff lacked standing to pursue injunctive relief ordering university to implement policies and procedures to protect students from sexual harassment because the threat of future harm to the plaintiff and other students "[was] merely conjectural"); *Republican Nat'l Comm. v. Francisco Aguilar,* 2024 WL 4529358, at *6 (D. Nev. Oct. 18, 2024) ("Courts have widely concluded that an alleged injury related to a lack of confidence in a voting system is 'too speculative to establish an injury in fact, and therefore standing.'") (collecting cases); *Brady Campaign to Prevent Gun Violence v. Brownback*, 110 F.Supp.3d 1086, 1093–94 (D. Kan. 2015) ("The Court cannot find that an increased risk of future gun violence in itself is a concrete and particularized injury; it is too abstract and speculative."); *Herrington v. Johnson & Johnson Cos.*, 2010 WL 3448531, at *3-4 (N.D. Cal. Sept. 1, 2010) (no standing for claims alleging bath

products contained a carcinogen because rather than "plead facts to suggest that a palpable risk exists," plaintiffs merely noted that the product "may be carcinogenic for humans" and "there could be no safe levels for exposure to carcinogens").

Here, similar to the plaintiff in *Cahen*, Plaintiff has not alleged any actual harm has occurred anywhere. Like in *Birdsong*, Plaintiff's complaint rests on a hypothetical risk that depends on a chain of contingencies. For example, "white-collar job displacement," would require, among other things, certain employers to identify potential areas where AI may be integrated, choose to integrate AI into such areas, elect to use OpenAI's systems over another company's AI systems, determine the use of AI in such areas could replace employees, and choose not to upskill or reskill existing employees to work alongside AI. A "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper*, 568 U.S. at 410; *see United Transp. Union v. ICC*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("When considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]").

The failure to allege a concrete and certainly impending injury prevents Plaintiff from establishing standing to pursue his speculative claims. *See Cahen*, 717 F. App'x at 723; *Birdsong*, 590 F.3d at 961.

Plaintiff also fails to allege the requisite particularized injury. A plaintiff cannot show a particularized injury where, as here, the only "asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see Lujan*, 504 U.S. at 575 ("[A] suit rested upon an impermissible 'generalized grievance' [is] inconsistent with 'the framework of Article III' because the impact on [plaintiff] is plainly undifferentiated and common to all members of the public.") (internal quotations omitted).

Plaintiff alleges general harm to the state of Hawaii and its residents. *See, e.g.*, FAC ¶1 (action seeks to prevent "harm to Hawaii's residents"), ¶6 ("This case represents the last line of defense for Hawaii's residents[.]"). Plaintiff does not allege that any of the alleged potential harms set forth in the FAC will impact him in any way that is different than the impact on other Hawai'i residents.

Nonetheless, Plaintiff alleges that he has standing because he has "specialized knowledge and expertise regarding AI safety and alignment risks" and has participated in "sustained advocacy for AI safety in Hawaii." FAC ¶¶17, 19.

11

Plaintiff, however, does not and cannot connect this "expertise" and "advocacy" to any particularized injury.

The Supreme Court has explained "longstanding concern with and expertise in such matters" cannot convey standing on a plaintiff "as a 'representative of the public.'" *Sierra Club v. Morton*, 405 U.S. 727, 736 (1972) (citation omitted), *superseded by statute on other grounds as stated in Fairview Twp. v. E.P.A.*, 773 F.2d 517, 523 (3d Cir. 1985). Judicial review is not available "simply at the behest of a partisan faction, but is exercised ***only to remedy a particular, concrete injury.***" *Id.* at 740-41 (emphasis added; citation omitted); *see Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Our refusal to serve as a forum for generalized grievances has a lengthy pedigree."); *Republican Nat'l Comm. v. Aguilar*, 2024 WL 4529358, at *3 (D. Nev. Oct. 18, 2024) ("'[N]o matter how sincere' a generalized grievance cannot support standing.") (citation omitted). Thus, "legal, moral, ideological, or policy objection[s]" are insufficient to show an injury-in-fact. *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see Maly v. Pritzker*, 2024 WL 4347110, at *2 (N.D. Ill. Sept. 30, 2024) (plaintiffs did not allege that possible election interference is more likely to affect their votes than the votes of others voters

12

in Illinois despite plaintiffs' "attempt to differentiate themselves by highlighting the degree of their involvement in the electoral process"). [2]

Because Plaintiff's alleged threatened harms amount to "impermissible 'generalized grievance[s] plainly undifferentiated and common to all members of the public,'" Plaintiff has failed to establish the requisite injury-in-fact. *Perry v. Newsom*, 18 F.4th 622, 634 (9th Cir. 2021) (quoting *Lance*, 549 U.S. at 440-41 (2007)); *see Yoshimoto v. Alaska Airlines, Inc.*, 2024 WL 4535037, at *1 (D. Haw. Oct. 21, 2024) (appeal pending) ("Plaintiffs' bare assertions of threatened harm from Alaska's then-impending merger with Hawaiian Airlines were insufficient to constitute the kind of concrete and particularized injury in fact that Article III requires.").

### 2. Plaintiff has not established causation and redressability.

Plaintiff also fails to establish the second and third elements for standing. To satisfy the second element, a Plaintiff must show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan,* 504 U.S. at 560 (cleaned up). To

---

[2] The FAC cites several state law cases as purportedly supporting that he has standing.  Standing in federal court, however, is governed by federal law. *Abdulaziz v. Twitter, Inc.*, 2024 WL 4688893, at *1 (9th Cir. Nov. 6, 2024).

satisfy the third element, a plaintiff must show it is likely, "as opposed to merely speculative," that the injury "will be redressed by a favorable decision." *Id.*

Plaintiff's FAC focuses on the potential harm from AGI. *See* FAC ¶51 ("The development of AGI without adequate safety measurers poses unique risks to Hawaii's economic, cultural, and social welfare."). Plaintiff, however, has not alleged (and cannot allege) that OpenAI is the only company with AI systems available to the public. An order enjoining OpenAI from operating in Hawai'i would not prevent other companies' with AI systems from operating in Hawai'i. Plaintiff does not allege that all other companies with such systems have "adequate safeguards" such that the alleged risks are unique to OpenAI.

Thus, Plaintiff has not shown causation and that it is likely, "as opposed to merely speculative," that the threatened injury "will be redressed by a favorable decision." *See Lujan*, 504 U.S. at 560; *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 40-46 (1976) (plaintiffs challenging tax subsidies for hospitals lacked standing where they could only speculate about whether a change in policy would "result in [plaintiffs] receiving the hospital services they desire"); *Brady Campaign to Prevent Gun Violence v. Ashcroft*, 339 F.Supp.2d 68, 77-78 (D.D.C. 2004) (plaintiffs could not establish traceability because they could not produce facts showing that manufacturers of semiautomatic assault weapons "would not seek some alternative means to repair grandfathered [weapons] or take other actions that

would continue to increase the number of available [weapons]" if the federal ATF discontinued its policy whereby manufacturers could repair weapons for owners); *Rhode Island Ass'n of Coastal Taxpayers v. Neronha*, 2023 WL 6121974, at *3 (D.R.I. Sept. 19, 2023) (plaintiff challenging a law expanding public beach access could not meet redressability element because if it "were successful in this case, it would do nothing to restrain nonparties, including the public whose very presence is the alleged harm, and state and local police, who have separate enforcement authority").

Accordingly, Plaintiff lacks standing and the case should be dismissed. *See Lujan*, 504 U.S. at 560-61.

B.    **Plaintiff's FAC Presents a Non-Justiciable Political Question.**

The political question doctrine bars judicial review of "those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n*, 478 U.S. at 230. Plaintiff's FAC presents a non-justiciable political question because it raises general policy grievances that rest on "policy choices and value determinations" and "matters not legal in nature." *Id.*

The Supreme Court has identified six independent tests for determining whether a dispute presents a political question:

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the

15

issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Baker v. Carr,* 369 U.S. 186, 217 (1962).  The second through sixth tests apply to this case.

Tests two and three apply because there is a lack of judicially discoverable and manageable standards for resolving Plaintiff's claims and granting the requested injunctive relief, and the court cannot decide this case "without an initial policy determination of a kind clearly for nonjudicial discretion." *See id.* Plaintiff's FAC requires a ruling regarding whether, to what extent, and which safety measures are advisable for AI systems. *See* FAC at Prayer for Relief (requests for a restraining order and injunction prohibiting OpenAI from making its products and services available within Hawai'i "until OpenAI can demonstrate implementation of legitimate and comprehensive safety measures").

These determinations are inherently political in nature. The regulation of AI requires balancing, *inter alia*, economic, technological, global competition, national security, business, innovation, and efficiency considerations against potential risks. The Court would also have to consider the harm to Hawai'i and its residents, local

businesses, education institutions, and local and state governments from being barred from using OpenAI's products and services. Indeed, the FAC alleges that OpenAI's services are widely used throughout Hawaii. FAC ¶¶13, 15.

Such policy determinations that "require consideration of 'competing social, political, and economic forces,' [] must be made by the People's 'elected representatives, rather than by federal judges interpreting the basic charter of Government for the entire country.'" *Juliana v. United States*, 947 F.3d 1159, 1172 (9th Cir. 2020) (citation omitted); *see El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 843 (D.C. Cir. 2010) (political judgments are "decisions of a kind which the Judiciary has neither aptitude, facilities nor responsibility and have long been held to belong in the domain of political power not subject to judicial intrusion or inquiry.") (internal quotations omitted); *Aktepe v. USA*, 105 F.3d 1400, 1404 (11th Cir. 1997) (wrongful death claims arising out of a military training exercise raised nonjusticiable political questions in part because a decision would require "a policy determination regarding the necessity of simulating actual battle conditions").

The fourth, fifth, and sixth tests also apply because the FAC evidences that whether, how, and to what extent to regulate and implement safeguards for AI are issues the political branches of government have already considered. For example, the FAC explains that multiple bills related to AI safety have been proposed in Congress. *Id.* ¶71. The FAC recounts state legislative efforts and a proposed bill to

create an Office of AI Safety in Hawaii. FAC ¶77. Plaintiff alleges "[d]espite these efforts, the bill failed to gain sufficient traction for passage in 2023 and wasn't even sponsored in 2024." *Id.*

The FAC alleges President Trump "sign[ed] an executive order that explicitly revoked Biden's AI safeguards **in favor of a minimal regulatory approach to 'maintain American AI dominance.'**" *Id.* ¶70 (emphasis added). The FAC discusses the Bletchley Declaration of November 2023, which Plaintiff alleges "represented the first major international (non-binding) agreement on AI safety." *Id.* ¶72. The FAC alleges that "the administration [] withdrew U.S. participation from the AI Safety Institutes Network that had emerged from Bletchley, citing '**unnecessary constraints on American innovation' and 'globalist overreach.'**" *Id.* ¶74 (emphasis added).

Moreover, Congress has enacted legislation providing for the creation of the National Artificial Intelligence Initiative, which promotes and subsidizes AI innovation across federal agencies. *See* 15 U.S.C. §§ 9401-9462. For example, the legislation includes a Department of Energy AI research program, *id.* § 9461, and provides the Director of the National Science Foundation shall fund research and education activities in AI systems and related fields. *Id.* § 9451.

In 2019, President Trump issued Executive Order 13859, which established a national strategy focused on maintaining American leadership in AI. 84 Fed. Reg. 3967 (Feb. 14, 2019). The Executive Order provided, among other things:

> (a) **The United States must drive technological breakthroughs in AI** across the Federal Government, industry, and academia in order **to promote scientific discovery, economic competitiveness, and national security.**

> (b) The United States must drive development of appropriate technical standards and reduce barriers to the safe testing and deployment of AI technologies in order to enable the creation of new AI-related industries and the adoption of AI by today's industries.

*Id.* In 2020 (emphasis added), President Trump also issued Executive Order 13960, which set principles for AI use within federal agencies and provides "executive departments and agencies [] have recognized the power of AI to improve their operations, processes, and procedures; meet strategic goals; reduce costs; enhance oversight of the use of taxpayer funds; increase efficiency and mission effectiveness; improve quality of services; improve safety; train workforces; and support decision making by the Federal workforce, among other positive developments." 85 Fed. Reg. 78939 (Dec. 3, 2020).

Because Plaintiff's FAC would require "implicitly questioning, and even condemning," United States policy, the political question doctrine applies and precludes judicial review. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 983–84 (9th Cir. 2007) (complaint alleging company provided Israeli Defense Forces with

19

equipment it knew would be used in violation of international law raised a nonjusticiable political question).

In *Cousart v. OpenAI LP*, the Court held that a complaint against OpenAI LP riddled with rhetoric and policy grievances and seeking "injunctive relief in the form of establishing 'an independent body of thought leaders' to approve uses of AI products before they are deployed" was "not suitable for resolution by federal courts" on Rule 8 grounds using reasoning similar to the political question doctrine. 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024). The court explained "[t]he development of AI technology may well give rise to grave concerns for society, but the plaintiffs need to understand that they are in a court of law, not a town hall meeting." *Id.* Like in Cousart, Plaintiff's FAC rooted in rhetoric and policy grievances is not suitable for resolution by federal courts. *See id.*

### C.    Plaintiff Fails to State a Public Nuisance Claim.

Hawaii law defines a nuisance as "that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the **free use, possession, or enjoyment of his property** or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his **legal rights**." *Littleton v. State*, 66 Haw. 55, 67 (1982) (quoting 58 Am.Jur.2d Nuisances § 1 at 555 (1971)) (emphasis added). To be classified as a

public nuisance, the alleged nuisance must be "in **a public place**, or where the **public**

**frequently congregate**, or where members of **the public are likely to come** within

the range of its influence[.]" *Id.* (emphasis added; citation omitted).

Here, the alleged public nuisance is unconnected to a public place or public

property. Plaintiff's claim is based on the speculative potential for harm resulting

from the lawful use of OpenAI's systems that is dependent on, among other things,

how such systems are used by third parties. *See* FAC ¶¶82-96. No Hawaii case has

allowed a public nuisance to proceed based on the alleged abstract risk of harm from

a lawful product or service that is lawfully used and unconnected to a public place.

Other courts have rejected attempts to hold a company liable for public

nuisance based on allegations it placed a defective product in the stream of

commerce. For example, the Third Circuit has explained:

> Whatever the precise scope of public nuisance law in New Jersey may
> be, **no New Jersey court has ever allowed a public nuisance claim
> to proceed against manufacturers for lawful products that are
> lawfully placed in the stream of commerce.** On the contrary, the
> courts have enforced the boundary between the well-developed body of
> product liability law and public nuisance law. Otherwise, if public
> nuisance law were permitted to encompass product liability, nuisance
> law would become a monster that would devour in one gulp the entire
> law of tort.

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536,

540 (3d Cir. 2001) (emphasis added; internal quotations omitted).

The Supreme Court of Rhode Island has similarly explained: "The law of public nuisance never before has been applied to products, however harmful…. **Public nuisance focuses on the abatement of annoying or bothersome activities.** Products liability law, on the other hand, has its own well-defined structure, which is designed specifically to hold manufacturers liable for harmful products[.]." *State v. Lead Indus., Ass'n, Inc*., 951 A.2d 428, 456 (R.I. 2008) (emphasis added); *see Detroit Bd. of Educ. v. Celotex Corp.*, 196 Mich.App. 694, 710 (1992) ("We agree and hold that manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect. To hold otherwise would significantly expand, with unpredictable consequences, the remedies already available to persons injured by products[.]"); *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719, 730 (Ok. 2021) (rejecting claim company was liable for a public nuisance for failing to warn of dangers associated with opioid abuse and addiction in promoting and marketing its opioid products because "[t]his classic articulation of tort law duties—to warn of or to make safe—sounds in product-related liability").

It is likely that the Hawai'i Supreme Court would follow the numerous cases that do not allow public nuisance claims against a provider based on the dissemination of a lawful product, especially where the only injury alleged is speculative future harm. Thus, Plaintiff's public nuisance claim should be dismissed.

22

*See Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997) (a court should use its best judgment to predict how the Hawaii Supreme Court would decide an issue that it has not addressed).

### D.    Plaintiff Fails to State a Public Trust Claim.

The public trust doctrine is a state constitutional doctrine based on Article XI, Section I of the Hawaiʻi State Constitution, which provides "[f]or the benefit of present and future generations, **the State and its political subdivisions** shall conserve and protect Hawaii's natural beauty and all natural resources[.]" Art. XI, § 1 Haw. Constitution (emphasis added); *see In re Waiola O Molokai, Inc.*, 103 Hawaiʻi 401, 421-22 (2004). "The duties imposed upon the state are the duties of a trustee" and "[j]ust as private trustees are judicially accountable to their beneficiaries for dispositions of the res, so the legislative and executive branches are judicially accountable for the dispositions of the public trust." *In re Waiola O Moloka*, 103 Hawaiʻi at 421-22 (internal quotation marks and citations omitted). Thus, only a state or its political subdivisions may be liable under the public trust doctrine.

Consistently, in support of his public trust claim, Plaintiff alleges that the "**State**[] [has] an affirmative duty to protect resources from novel threats[,]" the **State** has an "obligation to apply precautionary principles when facing potential irreversible harm[,]" and "the **State** is failing to fulfill its public trust obligations to protect these critical resources for present and future generations." FAC ¶¶104, 108

(emphasis added); *see id.* ¶103 ("Critically, the court affirmed that Hawaii's public trust doctrine required **state agencies** to take preventative action before irreversible harm occurs[.]").

Because Plaintiff does not assert his claim against a state or political subdivision, the claim fails. *See In re Waiola O Molokai,* 103 Hawaiʻi at 421-22.

### E. Plaintiff Fails to State a Claim for Design Defect Product Liability, Failure to Warn Product Liability, and Negligent Design.

Claims for design defect product liability, failure to warn product liability, and negligent design each require a defective product that has caused an injury. Plaintiff cannot meet this requirement because he has not alleged that OpenAI's products have caused an injury.

"Under Hawaii law, to impose strict liability because of a design defect, a plaintiff must prove that the product **was used** in an intended or reasonably foreseeable manner, that the manufacturer breached its duty by producing a dangerously defective product, and that the defect was **the proximate cause of plaintiff's injuries**." *Akee v. Dow Chem. Co.*, 272 F. Supp. 2d 1112, 1131-32 (D. Haw. 2003) (emphasis added) (citing *Lau v. Allied Wholesale, Inc.*, 82 Hawaiʻi 428, 440 (1996)); *see Stewart v. Budget Rent-A-Car Corp.*, 52 Haw. 71, 75 (1970) ("[O]ne who sells or leases a defective product which is dangerous to the user or consumer or to his property is subject to liability for **physical harm** caused by the

defective product to the ultimate user or consumer, or to his **property**[.]" (emphases added)).

"[F]or a manufacturer to be liable for failing to provide an appropriate warning, it must not only be subject to a legal duty to warn, but the breach of that duty (i.e. failure to give an adequate warning) must have been **the legal cause of the plaintiff's injuries**." *Tabieros v. Clark Equip. Co.,* 85 Hawai`i 336, 370 (1997) (emphasis added).

"The plaintiff's burden in a negligent design claim is to prove that the manufacturer was negligent in not taking reasonable measures in designing its product to protect against a foreseeable risk of injury and the manufacturer's negligence **was a [legal] cause of the plaintiff's injury**."  *Id.* at 354; *see Ruiz v. Gap, Inc.*, 380 Fed.Appx. 689, 691 (9th Cir. 2010) (emphasis added) (applying California law) ("[I]t is fundamental that a negligent act is not actionable unless it results in injury to another.") (quotations omitted).

Plaintiff makes the conclusory assertion that "[t]he defective design of OpenAI's AI systems has caused and will continue to cause harm to Plaintiff and Hawaii residents, including economic disruption, threats to critical infrastructure, misappropriation of cultural knowledge, and addiction-like dependency on potentially misaligned systems," FAC ¶120, but the complaint does not allege any facts supporting that Plaintiff (or anyone) has suffered any injury or actual damages.

Rather, the FAC alleges the potential for future economic and intangible harm. *See infra*, at 8.

By failing to allege that he has suffered an injury, Plaintiff has failed to plead a required element of his claims for strict liability, design product liability, and negligent design. *See Baker v. Castle & Cooke Homes Hawaii, Inc*., 2012 WL 1454967, at *10 (D. Haw. Apr. 25, 2012) ("Even if future bodily injury is compensable under other legal theories, it cannot sustain the tort claims asserted here. Actual damages are an essential element of a negligence claim just as actual injury is one of the elements of a products liability or strict liability claim.") (emphasis added); *Molokai Veterans Caring For Veterans v. Cnty. of Maui*, 2011 WL 1637330, at *28 (D. Haw. Apr. 28, 2011) (negligence claim failed because plaintiffs did not allege any injury they suffered as a result of defendant's conduct).

The two cases cited by Plaintiff in his design defect and failure to warn counts both involved past injuries and, therefore, are inapposite. *See Lemmon v. Snap, Inc., 995 F.3d 1085, 1087 (9th Cir. 2021)* (surviving parents of two boys sued social media provider alleging that it encouraged their sons to drive at dangerous speeds and thus caused the boys' deaths); *In re Soc. Media Adolescent Addiction/Pers. Injury Products Liab. Litig.*, 754 F.Supp.3d 946, 985 (N.D. Cal. 2024) (negligence claims against social media companies that were alleged to have contributed to

26

negative mental outcomes for students, which had caused school districts to expend resources "to combat that alleged public health crisis").

Accordingly, Plaintiff's design defect product liability, negligent design, and product liability failure to warn claims should be dismissed for failure to state a claim. *See, e.g., Marchante v. Sony Corp. of Am., Inc.*, 801 F.Supp.2d 1013, 1019 (S.D. Cal. 2011) (dismissing strict product liability claim "because Plaintiffs fail to allege physical injury or damage to other property.") (emphasis added).

### F.   <u>The Complaint Should Be Dismissed With Prejudice</u>

A court may deny leave to amend where amendment would be futile. Here, because the jurisdictional defects of lack of standing and preclusion by the political question doctrine, and the defects with the individual claims, cannot be cured, dismissal should be with prejudice. *See Locricchio,* 2021 WL 1893551, at *3 (dismissing pro se complaint with prejudice because the complaint expressed generalized political grievances that are non-justiciable and plaintiff lacked standing).

### V.   <u>CONCLUSION</u>

For the foregoing reasons, OpenAI respectfully requests that the Court grant its motion and dismiss Plaintiff's FAC with prejudice.

27

DATED:  Honolulu, Hawaii, June 16, 2025.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Lisa K. Swartzfager*
LISA K. SWARTZFAGER
DARENE K. MATSUOKA
NICOLE K.C. YAMANE

Attorneys for Defendant
OPENAI, INC.