IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TAMLYN HUNT, J.D., | CIV. NO. 25-00191 JAO-KJM |
| Plaintiff, | ORDER GRANTING DEFENDANT OPENAI, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 14) |
| vs. | |
| OPENAI, INC. a Delaware Corporation, | |
| Defendant. | |

**ORDER GRANTING DEFENDANT OPENAI, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT (ECF NO. 14)**

Pro se Plaintiff Tamlyn Hunt, J.D. ("Plaintiff" or "Hunt") brings this suit to enjoin Defendant OpenAI, Inc. ("Defendant" or "OpenAI") from making its products and services available in Hawai'i until it implements certain safety measures. OpenAI moves to dismiss all claims against it under Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6) ("Motion to Dismiss" or "Motion"). For the following reasons, the Court GRANTS OpenAI's Motion to Dismiss with limited leave to amend.

# I.    BACKGROUND

## A.    The First Amended Complaint's Allegations

Pro se Plaintiff is "a resident of the State of Hawaii, a long-time public policy lawyer, law instructor, and an advocate for AI safety who has worked for several years on AI policy matters."  ECF No. 10 ¶ 11.  Plaintiff claims he has "specialized knowledge and expertise regarding AI safety and alignment risks," *see id.* ¶ 18, and initiated this suit against OpenAI to obtain "urgent judicial intervention to prevent imminent and potentially irreversible harm to Hawaii's residents from OpenAI's increasingly powerful artificial intelligence systems deployed without adequate safety measures," *see id.* ¶ 1.

In his First Amended Complaint ("FAC"), Plaintiff explains how OpenAI uses and develops sophisticated artificial intelligence ("AI") systems that "can perform a wide range of cognitive tasks at or above human levels."  *Id.* ¶ 22.  Plaintiff details how AI experts and industry leaders, including OpenAI leadership, have warned about the risks posed by advanced AI.  *See id.* ¶¶ 23–32, 39–43, 49.  According to Plaintiff, "[d]espite acknowledging the extreme risks posed by its products, OpenAI has accelerated its development and deployment of increasingly capable AI systems while simultaneously reducing its safety measures and transparency."  *Id.* ¶ 33.  Plaintiff points to OpenAI's decision in April 2025 to "eliminate significant guardrails against misinformation and disinformation from

its AI systems," which is allegedly "a dramatic departure from OpenAI's previous

public commitments to develop safe and responsible AI systems." *Id.* ¶¶ 47–48.

Plaintiff avers that OpenAI's products and services are widely used in

Hawaiʻi and that unregulated AI "poses unique risks to Hawaii's economic,

cultural, and social welfare." *See id.* ¶¶ 50–51. According to Plaintiff, "[r]ecent

economic analyses indicate that a significant fraction of Hawaii's professional

services jobs could face significant disruption or elimination due to advanced AI

systems." *Id.* ¶ 53. Plaintiff claims that the state's tourism industry, small

businesses, and critical infrastructure face potential challenges. *See id.* ¶¶ 54–55,

61–64. Plaintiff further asserts that AI systems "may misappropriate and

misrepresent Hawaii cultural knowledge, practices, and language." *See id.* ¶¶ 57–

60. Finally, Plaintiff contends that Hawaii's democratic processes may be

compromised by AI, *see id.* ¶ 67, and AI systems "have the potential to exacerbate

existing inequalities in access to education, healthcare, and economic

opportunities." *Id.* ¶ 68.

Plaintiff also alleges that federal and international regulatory efforts "have

proven woefully inadequate to address the rapidly accelerating risks," *id.* ¶ 69,

highlighting Congress's failure to enact meaningful AI safety legislation, *see id.*

¶ 71. Plaintiff chronicles his unsuccessful efforts to introduce safety legislation at

the state level. *See id.* ¶¶ 77–78.

3

Invoking the Court's diversity jurisdiction, Plaintiff brings five state claims against OpenAI:  (1) public nuisance (Count I); (2) public trust doctrine (Count II); (3) design defect product liability (Count III); (4) failure to warn product liability (Count IV); and (5) negligent design (Count V)).  *See id.* at 10–29.  Plaintiff seeks an injunction[1] "prohibiting Defendant OpenAI from making its products and services available within the State of Hawaii until OpenAI can demonstrate implementation of comprehensive safety measures."  *See id.* at 29.

**B.    Procedural History**

On May 6, 2025, Plaintiff filed a complaint, along with a motion for a temporary restraining order and preliminary injunction.  *See* ECF Nos. 1, 2.  Two weeks later, on May 22, Plaintiff filed the operative FAC, ECF No. 10, which mooted the motions filed based on the original complaint, *see* ECF No. 11.  On June 17, Defendant filed the instant Motion, ECF No. 14, which Plaintiff opposed, ECF No. 21.  Defendant filed a reply in support of its Motion on July 29.  ECF No. 22.

---

[1]  Plaintiff's Prayer for Relief asks the Court to issue a temporary restraining order and a preliminary injunction.  *See id.*  But to obtain a temporary restraining order or a preliminary injunction, Plaintiff was required to file a motion after filing his FAC.  *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *see also, e.g.*, *Myers v. Paramo*, 2019 WL 1982218, at *4 (S.D. Cal. May 3, 2019) ("In order to obtain a preliminary injunction or temporary restraining order, a plaintiff is required to file a motion pursuant to Federal Rule of Civil Procedure 65(a) or (b).").  Plaintiff did not do so.  *See* ECF No. 11.

That same day, Plaintiff filed a Motion for Leave to File a Supplemental Brief and Supplemental Brief, ECF No. 23, which the Court granted, ECF No. 25. Defendant responded to Plaintiff's Supplemental Brief on August 12.  ECF No. 26. On August 29, Defendant filed a Notice of Supplemental Authority.  ECF No. 28. On September 9, Plaintiff filed a Motion for Leave to File Response to Defendant's Notice of Supplemental Authority, along with a proposed response, ECF No. 31, which the Court also granted, ECF No. 32.

Although Plaintiff requests oral argument, ECF No. 24, the Court elects to decide the Motion without a hearing.  LR7.1.  Plaintiff's request for oral argument is therefore DENIED.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), a party may move to dismiss a claim based on lack of subject matter jurisdiction, including the absence of standing.  *See* Fed. R. Civ. P. 12(b)(1); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010).  Federal courts are presumed to lack subject matter jurisdiction, and the plaintiff bears the burden of establishing that jurisdiction is proper.  *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  Dismissal under Rule 12(b)(1) is warranted when the plaintiff fails to meet this burden.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

A motion to dismiss under Rule 12(b)(1) can amount to a facial challenge.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial challenge, the movant asserts that the allegations of the complaint "are insufficient on their face to invoke federal jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (quoting *Safe Air*, 373 F.3d at 1039).

## B.    Rule 12(b)(6)

Rule 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A Rule 12(b)(6) dismissal is proper when there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged."  *UMG Recordings, Inc. v. Shelter Cap. Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  Under Rule 12(b)(6), the court accepts as true the material facts alleged in the complaint and construes them in the light most favorable to the nonmovant.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).

But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting and altering *Twombly*, 550 U.S. at 557).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" whereby the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570, in relation to the "short and plain" fact-pleading standard required by Federal Rule of Civil Procedure 8(a)(2)).

## C.    Leave to Amend

Dismissal should be with leave to amend "unless it is clear . . . that the complaint could not be saved by any amendment."  *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655–56 (9th Cir. 2017) (quoting *Thinket Ink Info Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004)).  But a district court may dismiss without leave to amend when amendment would be "futile."  *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).

## III.    DISCUSSION

## A.    Standing

Defendant first argues that Plaintiff lacks standing to assert his claims.  *See* ECF No. 14-1 at 12–22.  The Court agrees.

Standing is a threshold matter central to federal courts' subject matter jurisdiction.  *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.

2007).  Article III of the Constitution limits federal courts' jurisdiction to certain "cases" and "controversies."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."  *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).  To establish standing, a plaintiff must demonstrate that:  (1) the plaintiff suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent"; (2) the injury is fairly traceable to defendant's conduct; and (3) the injury can be redressed through adjudication.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

## 1.    Injury in Fact

Defendant contends that Plaintiff fails to adequately allege injury in fact. *See* ECF No. 14-1 at 13. "[W]hen a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  The "threatened injury must *be certainly impending*" and "allegations of *possible* future injury are not sufficient."  *Clapper*, 568 U.S. at 409 (internal brackets omitted). Additionally, the injury must be "concrete," meaning that the harm must be "real" and "not abstract," *see Spokeo*, 578 U.S. at 354, and "particularized," meaning that it "must affect the plaintiff in a personal and individual way, and not be a

generalized grievance." *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) (internal quotation marks omitted).  This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection" and "prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders."  *See id.* at 381–82.

Here, Plaintiff has not alleged that he has suffered an actual injury or will suffer an imminent injury.  Instead, Plaintiff's FAC merely alleges *possible* future harms that are simply too speculative to satisfy the requirement that threatened injury be "certainly impending."  *See Clapper*, 568 U.S. at 409–10; *see also, e.g.*, ECF No. 10 ¶ 53 ("Hawaii's professional services jobs *could* face significant disruption or elimination due to advance AI systems" (emphasis added)); *id.* ¶ 54 ("The state's tourism industry . . . faces *potential* disruption through AI-driven automation" (emphasis added)); *id.* ¶ 57 ("AI systems trained on cultural materials without appropriate permission or context *may* misappropriate and misrepresent Hawaiian cultural knowledge, practices, and language" (emphasis added)); *id.* ¶ 58 ("The Hawaiian language . . . *could* face new challenges from AI-generated content" (emphasis added)); *id.* ¶ 60 ("Cultural practices protected under Hawaii state law . . . *may* be inadequately respected by AI systems" (emphasis added)); *id.* ¶ 64 ("Hawaii's strategic military importance introduces additional security considerations regarding AI systems that *might* impact defense-related

9

infrastructure" (emphasis added)); *id.* ¶ 65 ("The social welfare and governance concerns include the *potential* for increasingly capable AI systems to generate misinformation" (emphasis added)); *id.* ¶ 68 ("AI systems have the *potential* to exacerbate existing inequalities" (emphasis added)).  Each of these purported future harms are conclusory allegations premised "on a highly attenuated chain of possibilities" and are therefore insufficient to establish standing.  *Clapper*, 568 U.S. at 410; *see also, e.g., Seegert v. Rexall Sundown, Inc.*, 2017 WL 5973414, at *4 (S.D. Cal. Dec. 1, 2017) ("While the standard for reviewing standing at the pleading stage is lenient, . . . a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing." (citing *Schmier v. U.S. Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 820 (9th Cir. 2002))).  And each of these economic and social harms alleged are too "general or amorphous" to be concrete.  *See Nat'l Wildlife Fed'n v. Burford*, 871 F.2d 849, 852 (9th Cir. 1989); *see also Spokeo*, 578 U.S. at 341 (explaining that a court should consider "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts").

Nor has Plaintiff sufficiently alleged that the threatened harms affect him in a "personal and individual way."  *See All. for Hippocratic Medicine,* 602 U.S. at 381.  Plaintiff makes broad allegations about AI's risk to Hawaii's economic,

10

cultural, and social well-being, but fails to show how these risks would impact him

differently from how other Hawaiʻi residents would be affected.  Plaintiff alleges

that he has standing because of his "specialized knowledge and expertise regarding

AI safety and alignment risks" and his "sustained advocacy for AI safety in

Hawaii."  ECF No. 10 ¶ 18.  He expands on this in his opposition, arguing that

"[t]he Hawaii Supreme Court has consistently held that individuals with technical

expertise and sustained involvement in public issues suffer particularized injury

sufficient for standing."  *See* ECF No. 21 at 10 (citing various Hawaiʻi Supreme

Court cases).  But the problem for Plaintiff is that "[a] party seeking to commence

suit in federal court must meet the stricter federal standing requirements of Article

III."  *See Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001).

Plaintiff has not pointed the Court to any cases demonstrating that technical

expertise is sufficient to confer Article III standing, and the Court's own research

indicates that such expertise is inadequate.  *See*, *e.g.*, *Johnson v. Weinberger*, 851

F.2d 233, 235 (9th Cir. 1988) ("Appellant's alleged 'computer expertise' does not

establish a unique entitlement to standing.  His professional insight . . . is

irrelevant.  He must instead demonstrate a personal stake in the outcome of the

controversy."); *Sierra Club v. Morton*, 405 U.S. 727, 736 (1972) (explaining that

"longstanding concern with and expertise" is insufficient to confer standing as a

"representative of the public.").  Rather than demonstrating a personal stake in the

outcome of the controversy, Plaintiff raises only general moral and policy concerns regarding the way AI has been developed and regulated—the type of "value interests" that federal standing requirements are designed to screen out. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. at 381–82; *see also Cousart v. OpenAI LP*, 2024 WL 3282522, at *1 (N.D. Cal. May 24, 2024) (dismissing plaintiffs' complaint about AI's risks to humanity where plaintiffs included "policy grievances that are not suitable for resolution by federal courts" and explaining that while "[t]he development of AI technology may well give rise to grave concerns for society, . . . the plaintiffs need to understand that they are in a court of law, not a town hall meeting.").

### 2.    Causation and Redressability

Defendant also contends that Plaintiff fails to establish the second and third elements of standing:  causation and redressability.  *See* ECF No. 14-1 at 20–21. Focusing primarily on the redressability element, Defendant maintains that Plaintiff "has not alleged (and cannot allege) that OpenAI is the only company with AI systems available to the public," or that the other companies, unlike OpenAI, have "adequate safeguards."  *Id.* at 21.  An order enjoining OpenAI from operating in Hawaiʻi, Defendant says, would not prevent the other companies from functioning in Hawaiʻi.  *Id.*  Defendant thus argues that Plaintiff has not shown that it is "likely, as opposed to merely speculative, that the threatened injury will be

redressed by a favorable decision." *See id.* (quoting *Lujan*, 504 U.S. at 561).

Plaintiff responds that Defendant "ignores OpenAI's overwhelming market

position" and, citing *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007), argues that

"relief against major contributors to a problem satisfies redressability even when

other actors remain." *See* ECF No. 21 at 14–15.

While OpenAI does not appear to dispute that the use of AI comes with

certain risks, *see generally* ECF No. 14, the Court agrees that Plaintiff has not

explained how these problems would be redressed by an order enjoining OpenAI

from making its products and services available within Hawaiʻi, especially when

other similar companies with comparable AI systems could continue operating

here.  Further, Plaintiff's reliance on *Massachusetts* is misplaced.  In

*Massachusetts*, the Supreme Court ultimately concluded that the state had standing

to challenge the agency's failure to promulgate rules to deal with greenhouse gas

emissions even though it was unclear how much such rules would decrease global

warming.  549 U.S. at 525.  But in reaching that conclusion, the Supreme Court

explained that "Congress has . . . authorized this type of challenge to EPA action"

and that "a litigant to whom Congress has accorded a procedural right to protect

his concrete interests . . . can assert that right without meeting all the normal

standards for redressability and immediacy." *See id.* at 516–17.  *Massachusetts* is

therefore easily distinguishable from the present case because Plaintiff is not asserting a statutorily-provided procedural right.

In sum, even accepting Plaintiff's allegations as true, the Court concludes that Plaintiff has not adequately demonstrated that he has standing to bring these claims. The Court thus lacks jurisdiction over this suit and dismisses Plaintiff's FAC.[2]

Because Plaintiff could conceivably plead an "actual or imminent" injury that is "concrete and particularized" and likely to be remedied by the relief sought, the Court concludes that amendment would not be futile, *see Cervantes*, 656 F.3d at 1061, and dismisses the FAC with leave to amend, except for Plaintiff's public trust claim, which is dismissed without such leave. *See infra* section III.B. The Court cautions Plaintiff that, although it must generally construe a pro se litigant's pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 97 (2007), because Plaintiff is an attorney, *see* ECF No. 10 ¶ 11, the Court construes his allegations in the same manner as if he were represented by counsel, *see Huffman v. Lindgren*, 81

---

[2] Defendant points to the political question doctrine as another basis for why the Court lacks jurisdiction over the suit. *See* ECF No. 14-1 at 22–27; *see also Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 980 (9th Cir. 2007) ("[T]he presence of a political question deprives a court of subject matter jurisdiction."). But because the Court dismisses the case for lack of standing, and because amendment could moot this argument, the Court declines to wade into the applicability of the political question doctrine at this time.

F.4th 1016, 1019 (9th Cir. 2023) (clarifying that "attorneys representing themselves should not be afforded special consideration."). Failure to adequately allege standing in any Second Amended Complaint may result in a conclusion that further amendment would be futile.

## B. Failure to State a Public Trust Claim

Defendant alternatively argues that Plaintiff's FAC fails to state a claim upon which relief can be granted. ECF No. 14-1 at 27–34. While the Court wouldn't normally reach the Rule 12(b)(6) argument where it lacks jurisdiction, it nevertheless examines Plaintiff's public trust claim to explain why the Court will not grant leave to amend that claim.

The public trust doctrine is based on Article XI, section 1 of the Hawaiʻi State Constitution, which provides that "*the State and its political subdivisions* shall conserve and protect Hawaii's natural beauty and all natural resources, including land, water, air, minerals and energy sources, and shall promote the development and utilization of these resources in a manner consistent with their conservation and in furtherance of the self-sufficiency of the State." *See* Haw. Const. art XI, § 1 (emphasis added). This doctrine concerns the duties that *the State* and its agencies must discharge. *See, e.g.*, *Mauna Kea Anaina Hou v. Bd. of Land & Nat. Res.*, 136 Haw. 376, 405, 363 P.3d 224, 253 (2015); *In re Waiola O Molokai, Inc.*, 103 Haw. 401, 421, 83 P.3d 664, 685 (2004). Plaintiff

15

acknowledges as much in his FAC. *See, e.g.*, ECF No. 10 ¶ 103 ("Hawaii's public trust doctrine required *state agencies* to take preventative action . . ." (emphasis added)); ¶ 104 ("This precedent . . . recognized the *State*'s affirmative duty to protect resources from novel threats" (emphasis added)). Plaintiff cannot state a claim against OpenAI, a private entity, under a doctrine that concerns the duties of state governmental entities. Plaintiff asserts that "Government entities throughout Hawaii use Open AI's systems, creating direct state action in the deployment of potentially unsafe AI systems." *See* ECF No. 21 at 24. But no government entities are defendants in this suit. Plaintiff's public trust claim therefore cannot stand or be resurrected via amendment.

## IV.  CONCLUSION

For the reasons stated above, the Court orders as follows:

1.  The Court GRANTS Defendant OpenAI, Inc.'s Motion to Dismiss (ECF No. 14). Count II is dismissed without leave to amend. Counts I, III, IV, and V are dismissed with leave to amend. Plaintiff's Second Amended Complaint is due by 10/8/2025. No new parties or causes of action may be added without leave of court.

2.  Plaintiff's request for oral argument (ECF No. 24) is DENIED.

//

//

16

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 17, 2025.



Jill A. Otake
United States District Judge

CIV. NO. 25-00191 JAO-KJM, *Hunt v. OpenAI, Inc.*; Order Granting Defendant OpenAI, Inc.'s Motion to Dismiss First Amended Complaint (ECF No. 14)